All right, we'll hear counsel on Atterbury and Horkchild against U.S. Marshals Service. Good afternoon, Your Honors. Josh Ellison, Cohen, Weiss, and Simon, LLP for Plaintiff Appellant Stephen Atterbury in Case 18-1713 and Plaintiff Appellee Daniel Houschild in Case 18-2378. Your Honors, the threshold question of whether there's a constitutionally cognizable property interest in continued employment by court security officers is squarely controlled by this court's decision in Stein v. Board of the City of New York. That case stands for a simple proposition which applies equally here. Two private parties can contract between themselves to create a property interest on behalf of one of them, and the government cannot destroy that interest without providing due process. And as was held in Stein, a good cause or here a just cause provision in a CBA between an employer that contracts to provide services with the government and the union that represents the employees of that contractor does create such an interest. And if the government wishes to impinge on that interest, it has to comply with due process and provide meaningful procedures. Notice of the conduct that's, in this case, led to terminate, in these cases led to termination and an evidentiary and an adversarial hearing after the decision to remove is made. The cases cited by the government, in each of them, there was an explicit exclusion from the just cause requirement in the collective bargaining agreement that said if the government directs that the CSO be removed, then just cause doesn't apply. That's not the case here. That was explicitly removed in the CBA that was negotiated and took effect in 2010 and was in place in 2012 and 2011 when these two men lost their jobs. Judge Seibel noted, it says, no CSO will be removed without just cause, period. Is the remedy you seek reinstatement? Yes. The removal should be set aside. If he's reinstated, does anything prevent the marshal service from observing procedural due process and firing him for the episodes that they think merit firing? No. The government has the right to direct a CSO's removal if it adheres to due process. So if they give the notice that you say is lacking and sustain that he left his post, he gets reinstated and then immediately gets fired? Well, if they were to give him notice and a meaningful opportunity to be heard, but we believe the process matters here. And if there was an actual meaningful ---- Well, this isn't like it's going to take six, an elaborate hearing to determine did he leave his post on that day. That's correct. It shouldn't. I'm just wondering, are you spinning your wheels here? Is anything useful going to happen, even if you're right? Well, I would, you know, I would hope not. I can't control what the government's going to do. But they would be within their rights. He's vulnerable to being fired the day he gets rehired. Well, I don't think he is vulnerable to be. He's entitled to a process. So that process would play out. What I'm saying is that we should not presuppose that if a proper hearing is held and witnesses are heard, that the marshal service will just adhere blindly to a prior decision, but will actually pay attention to what the witnesses say. And I take it that both of these gentlemen believe that they are entitled to prevail at such a hearing. They might not, but they might. That's correct, Your Honor. Does he dispute he left his post? Does he? Mr. Atterbury didn't abandon his post. He left early after notifying his lead CSO that he was sick. So he didn't abandon the post. Abandoning the post, you know, means leaving without permission, in our view. You're saying he was absent with leave rather than without leave because he notified the supervisor, and the supervisor said something that, in your view, a reasonable person would have taken as permission. That's right. Correct. And the exclusion from the arbitration provisions of the collective bargaining agreement, of terminations that result from a direction from the marshal service, does not vitiate the just cause provision. There's simply a recognition that the contractor, ACAL, has no power or ability to make the marshal service participate in a private arbitration between the union and the employer. So they aren't analogous to the provisions at issue in Strolberg or the other cases where it explicitly said just cause does not or a government-directed removal is just cause. They didn't say that. They simply say we're not going to drag the U.S. marshal services, and in fact we can't, into our private arbitration proceedings. And can the procedural due process you say he's entitled to be satisfied post-termination? I think post-termination he's entitled, under the Lucardo decision, to an adversarial hearing, but I believe there's also a pre-termination requirement where he has to have meaningful notice of what he's alleged to have done that would, that is under consideration for removal. And he didn't, neither of these men got that. I'm sorry. So your point is that the post-termination, no matter how adequate, would not satisfy due process in this case? I don't believe, I believe that under the court's. Once they fail to give the proper pre-termination notice, there's an irreparable injury, is that your claim? I believe under the flexibility that's afforded in these situations, it's conceivable that a full, a fulsome post-hearing process could satisfy due process, even if there was inadequate notice initially. It's possible. But that would turn on the facts and the notice to give it. And here I think it's, it's clear that there wasn't. But in this case, there was no such hearing. Correct. There was no hearing. The gentleman simply had not an opportunity to write a letter. They had no idea what, you know, there are numerous allegations. They had no idea what the, what the marshal service was relying on, which of the allegations it thought were credible, which it thought were not. If any of them were thought were not, which it felt led to rise to the standard that it felt merited removal, there was none of that here. And I would also note that the marshal service relies on its contract with a call as if that should somehow be imported into the collective bargaining agreement. Our position is that that's actually irrelevant, that the agreement between parties who did not create the property interest cannot then work to vitiate the property interest. But even those provisions reflect an understanding that there will be a process. There is a notice, there is a notice and opportunity, which was followed here. It was simply inadequate. There's a representation, there's an agreement that in certain circumstances, the marshal service can immediately remove someone from the, for certain serious misconduct can be immediately removed, implying that in other situations that's inappropriate. So any court security officer reviewing this document, I believe, would have an understanding and an entitlement that even this, even these provisions between his employer and the marshal service do not destroy his interest in continued employment. I take it there's no dispute here about the substance of the marshal service's requirements or standards, that those embody some notion of what just cause means. The question here is just did the two gentlemen in question violate any of those standards? That's correct. There's no dispute that an employee who violates those standards, depending on the seriousness of the violation, can be removed and that would be just cause. That's correct. I would just note that Judge Arcaro and Atterbury suggested that a call marshal service contract needed to say good cause or have similar verbiage to create a property interest. And I think respectfully he failed to understand the analysis. It's not a call marshal service contract that creates the property interest. It's the union employer contract that creates the property interest. So it's the collective bargaining agreement? I'm sorry? So it's the collective bargaining agreement? The collective bargaining agreement. That's what creates the interest. And that's with the union who's in privity with the two individuals here. And I would just note in the case of Hauschild, just making clear the importance of due process and how it was not and how here it was really egregious to not provide it. He was accused of 11 different types of misconduct, only one of which the contractor found had any merit. And he was simply told the marshal service no longer has confidence in your ability to do the job. Didn't address whether they disagreed with Arcaro's factual findings, didn't say that they disagreed with the extent to which Arcaro found that a particular violation was serious. Mr. Hauschild really had no idea what the marshal service thought led to his firing. Similarly, with Mr. Atterbury, there were several witnesses. Mr. Atterbury had no idea what the marshal service was crediting, who it was not. And so he really had no meaningful opportunity to, and if you review the letters, it's really just a blunderbuss attempting to respond to everything without any knowledge of what other people had said about it. And with that, I would just like to reserve the three minutes of rebuttal. Thank you. May it please the Court. Christine Poscablo, United States Attorney's Office for the Southern District of New York, on behalf of the United States Marshal Service in both the Atterbury and Hauschild cases. I do want to address the issues that the Court has raised about due process, but I first want to note that while this Court in Stein did hold that a protected property interest could arise from a just cause provision in a contract between a government contractor and an employee, that decision does not require a finding here where the just cause provision is limited by other terms within that same provision and where there are other terms of the employment that are relevant to the Court's consideration of whether a protected property interest arises. The Stein decision does not require finding of a protected property interest here. But would the marshal service, in the government's view, be entitled to fire Mr. Atterbury, let's say, by making a finding that he didn't in fact abandon his post without authority, but he slammed the door on the way out and that shows a bad attitude and we don't like that, so we're going to fire him anyway? Well, yes. The contracts at issue in this case do reserve to the marshal service very broad discretion in determining whether or not a CSO satisfies the qualification and performance standards that they've agreed to abide by. So the marshal service does have that. But we have these 58 standards, right? And the CSOs are, Mr. Ellison agrees, bound by those, that they acknowledge that they have to live up to those and they can be fired if they don't. But the marshal service is not bound by those. The marshal service is perfectly free to fire a CSO for any reason or no reason at all. The marshal service, well, if the marshal service determines in its discretion that they have lost trust in the ability of a CSO to fulfill this security. I don't like the cut of his jib. I mean, they're just, you know, we just don't like this fellow anymore. That's good enough. I don't think that it goes that far, but there are. Well, if it doesn't go that far, then isn't there some property interest? If there is some standard that has to be applied of just cause, that it's not just the CSOs are employees at will, then don't they have a property interest that requires notice and an opportunity to be heard? And we can worry about the details of what that is. But if there is some substantive limitation that the marshal service is obliged to make some kind of finding, isn't that exactly the kind of just cause provision that gives a property interest? Well, the default for an employment relationship is an at will employment relationship. And I think to find just cause protection applies to an employee that has to arise from the terms of the contract. So here, yes, there is a just cause provision in Section 8.1 of the CBA, but that provision is then qualified in a way that removes protection from CSOs where the marshal service makes a determination like they did here that a performance standard was violated. But it removes certain procedural protections that the contract would otherwise provide. If a call decided it didn't like the CSO anymore and thinks he violated some rule, they're entitled to fire him. I suppose whether the marshal service likes it or not. I don't know if that's in the record. They're entitled to fire him, but then they have a grievance procedure that requires arbitration and various other kinds of proceedings that are specific in the contract. Those procedures explicitly do not apply where the marshal service says we don't like the person anymore. That's right. And in this case, removing those, that avenue of recourse actually has the effect of removing a protected property interest because the plaintiffs had argued that they could still bring a lawsuit against a COW under the LMRA. But they acknowledged that because of the hold harmless clause in the just cause provision, the only claim they could bring is one for equitable relief. But a COW cannot direct. But what does that have to do with what happens here? Here, they did something completely different than either an LMRDA suit or a grievance arbitration. They said the marshal service has acted arbitrarily and capriciously under the APA. And rightly or wrongly, we decided that states a cause of action. And as a result of that, the marshal service's conduct is called into question. Mr. Ellison says, Stein says, et cetera, et cetera. So they have a remedy. They've exercised the remedy. We upheld the remedy as something that's available to them in the Federal courts. Now the only question is, are they entitled to that remedy or not as a substantive matter? It actually has not been determined yet because with respect to the arbitrary and capricious review, the Court does not have jurisdiction to review that claim as the district court decided. Because discretion is committed to the agency on that issue, there is no review under arbitrary and capricious. And with respect to what is now before this Court, whether or not the plaintiffs have a protected property interest, a constitutionally protected property interest is a threshold issue to jurisdiction. And so by arguing that they can bring in the case. Breyer. Well, it's not an issue of jurisdiction. It's an issue of substance. It's a threshold. It's the first step in deciding whether there's a due process violation. And by assuming that they can bring that case, it really puts the cart before the that they have that protected property interest. But, you know, whether or not, I mean, you say, and I think you're basically right about this, that we should look to the terms of the contract on their plain meaning and not take into account the drafting history. Still, the prior contract that existed here is a hypothetical alternative that could have been used. It is indeed something that is used, as Mr. Ellison points out, in other contracts, in other places. And yet this one does something different than that. Why doesn't, why shouldn't we look to that, regardless of whether we look to it as a matter of drafting history to interpret an ambiguous contract? Just a matter of this is unambiguous. It doesn't say this constitutes just cause. It could have other contracts do. Right. Certainly the 2007 CBA and the collective bargaining agreement just cause provision language in some of the other cases does much more clearly remove from just cause protection situations where the marshal service determines that an employee should no longer, is no longer qualified. But to disregard limitations in Section 8.1 here and the other terms of the contract is not what's called for. In fact, by doing that, that would be in contravention of what the Supreme Court has directed courts look at in assessing whether protected property interests exist, which is all of the terms of the contract and whether there is, in fact, a mutually explicit understanding that supports the employee's claim of entitlement to continued employment. Here. It does say, though, that he shall not be fired except for just cause. Right. But then the protections that that give are removed. Plus, if you look at the other terms here. Does that remind you a little bit of Loudermill and where the Supreme Court says that when the State gives a property interest, it gives a property interest and it can't say we give you a property interest, but these are the procedures that govern. And it doesn't matter whether those procedures would otherwise satisfy due process. The argument was made that the property interest is inherently limited by the procedures. Isn't that the same argument you are making here? The one that the Supreme Court floated or a few justices floated in Arnett against Kennedy and then got held not to be the law in Loudermill? I think it's different because here the property right only arises from a contractual relationship. And to properly interpret a contractual relationship, you have to look at and give credit to all of the terms. With respect to, for example, the mutually explicit understanding directive, here really the only mutually explicit understanding between the marshal service and the plaintiffs arise from the acknowledgments and certifications that the plaintiffs were required to sign as a prerequisite to working as a CSO under the contract. And by signing those, they acknowledge that they were governed by the terms of the contract and that if they violated any of the performance standards, they could be removed from operating under the contract. Indeed so. Indeed so. So they were given to understand that if they violated the standards, they get fired. Isn't there a negative pregnant in that, that if they don't violate the standards, they don't get fired? But here all of the discretion to make that determination is reserved to the marshal service. And the marshal service found in each of these cases that Mr. Atterbury and Mr. Hauschild violated performance standards. But which performance standard did they violate? And how did they determine that there was a violation? If the substantive requirement to fire them is that they must have violated a standard, doesn't that mean that there has to be fair procedure to determine whether they did or didn't violate the standard? Right. And so I think that goes to the process that was afforded the plaintiffs in this case. Here the marshal service followed the provisions in the contract, which ---- Let me ask you about the rights afforded to them. How would you describe that property right? And what is it in your view, what is the source of the property right? To the extent that they have a property right, it would arise, it could arise ---- There is some property right. Let's just take it step by step. Is there a property right here of some due process? No. No. We do not think that the CSOs have a property, a protected property interest in continued employment as a CSO where the marshal service makes a decision or makes a determination that they are no longer qualified to serve under that contract, for example, because they violated performance standards. So the long and short of it is that there are no, there are no such rights in your view. That's right. That's right. In your view, there are at-will employees? Yes. When the marshal service makes a determination as to whether or not they satisfy the qualifications. How can they be at-will employees one day and not the next? In the same manner as in the Stolberg case where the Ninth Circuit found, albeit considering a just cause provision that is more clear than the one here as far as what rights are afforded. In that case, a contract between the CSOs union and the federal contractor provided that the CSOs could only be terminated for just cause except if the marshal service made a determination that they were not qualified to serve as CSOs. Here, because of all the terms of employment that reserve that discretion to the CSOs and the limitations on the just cause provision in Section 8.1 of RCBA, there is a hybrid employment relationship created there where a CAL can only terminate the employees for just cause, but where the marshal service has determined that they're not qualified to serve, they can be terminated without just cause. Can you point me to the specific language about discretion that you're relying on? I mean, there are a number of things here in the various contracts, but some of them say things like if any of the standards are violated. This is in the, I believe this is page A118. We're talking Section C12, parens A. This is the contract, I believe, between a CAL and the marshal service. That says if any of the standards are violated, the government may direct the contractor to remove the individual from the court facility. Now, there may be other provisions somewhere that say the marshal service and its sole discretion can fire CSOs whether they violate any of the standards or not. But if there is, I'd like you to point me to exactly what language you're relying on. I guess. Just one moment, Your Honor. I mean, there are lots of other provisions in there. There's in Section C7, parens A, it says failure to meet any suitability requirements of the contract shall constitute nonperformance and subject the individual to removal. But that, too, seems to, I'm not sure whether the suitability requirements are the same as the performance standards, but that, too, refers to specific content and says they can be removed if X. The issue, and Your Honor, I apologize, I don't, I'm still looking for the exact cite, but the issue is that the marshal service has reserved in the contract between itself and a CAL the ability to make a final determination as to whether or not a CSO should be removed from the contract, even if a CAL. A final determination of what is the question? If the answer is, I have no problem with the idea, and I don't think Mr. Ellison does either, that the marshal service is the determiner, they're the deciders, as to whether there has been some kind of violation. But if the substantive standard remains that there must be some kind of violation, then there still is a standard that has to be met, and that does not smack to me, at least on the face of it, of at-will employment. There's this whole, there's 58 different standards that the marshal service has listed as, in effect, grounds for termination. And if one of them that I've missed says, and also whenever we just feel like firing the person, that would be different, and I'd be interested in knowing if there is such a pure discretion, pure at-will, if we don't like the fellow, he's gone, kind of provisioned somewhere. Well, it's at section H3C, Joint Appendix pages 176 to 177, that does provide that any employee provided by a CAL, that the contracting officer asserts has failed to meet the performance requirements, may be removed from performing services under the contract. And the contract... Are you relying on assert? If they just accuse the person of this, not that they have to find that it's true, is that the key word here? Because this still says, if the marshal service asserts that he violated a performance standard, that brings us back to, did he leave his post? Did Hauschild refuse, fail to notify the proper people about his brother's criminal record, and so on? That comes back to standards again. But are you saying that because it says asserts, that if the marshal service just says, we accuse him, j'accuse, of violating a performance standard, we're not saying he actually did, we didn't make any finding, we didn't have any process, but we think he did, so he's gone? I think it's important to note that neither the acknowledgments nor certifications that the CSOs sign, nor anywhere in the contract where there are provisions like this, is there a requirement that the marshal service have just cause for the claimant to make. In this particular case, though, upon reviewing investigative files prepared by CAL, investigation which involved interviewing in person the plaintiffs themselves, as well as numerous witnesses, obtaining written statements in response to very specific allegations supported by evidence, the marshal service, upon reviewing all that information, made a determination that a performance standard was, in fact, violated. Does the letter actually say that? It certainly doesn't specify which performance standard. In the case of House Shield, there's no way to know whether what the marshal service decided was, yes, he violated the standard that a CAL says he violated, and that's a firing offense, or whether they made a finding that he violated some other performance standard, because there were these various other accusations, and just as they did in Atterbury, apparently, they could overrule a CAL's fact finding and find that he violated that other thing. But we have no way of knowing in House Shield's case which, if any, performance standard the marshal service believes he violated, and he has no way of knowing that either. While the information that House Shield and Atterbury received did not cite to a particular performance standard, the allegations, the information they received specified all the allegations and the evidence that supported those allegations, which gave rise to violations of particular performance standards, and they had an opportunity to respond to each of those underlying allegations, which they did. And, you know, going to the Court's questions earlier to Mr. Ellison, as far as whether any additional process would be required in this case here, in taking into account the factors that the Supreme Court noted in Matthews v. Eldridge, you need to be considered in assessing whether a process is sufficient. Here we have a case where the probative value of any additional or substitute process would be minimal, if anything at all, because it would just be, if there were to be a hearing where the plaintiffs or other witnesses were able to testify, that would be merely cumulative or superfluous of the information that a CAL had already gathered through its investigation. And weighing that against the burden on the government, the marshal service, the function of the marshal service is to provide security to Federal courthouses and to ensure that the CSOs that are doing that meet the standards that the marshal service deems are important. Yes, Judge. Thanks very much. Thank you, Your Honor. We'll hear from Mr. Ellison. I gave you some extra time, obviously. Thank you. I just wanted to address briefly two points raised by counsel. The CSOs did get an allegations letter. They did not get the evidence that was purportedly supported. They did not have access to a CAL's investigation record. They did not have statements from witnesses or anything that would give them fair notice of the evidence. It's essentially analogous to a notice pleading. That's all they had. You did this, you did this, you did this. Nothing fleshing out what conduct or what evidence the marshal service or a CAL relied on in making its determinations. And with respect to H-3, there's we don't dispute the marshal service is the final decider of whether a CSO is qualified to serve under the contract.  under the contract. But nowhere in any of the provisions of Section H-3 of the marshal service, a CAL contract, does it say the marshal service has unfettered discretion. Does it say it may fire or remove a CSO from the contract for any reason or no reason? What do you think of H-3 parens B? The United States Marshal Service reserves the right at all times to determine the suitability of any contractor employee to serve as a CSO. Decisions rendered by any dispute resolution process shall not be binding on the marshal service. Well, that's like the procedural provision of the CBA. But then any decision to continue a contractor employee in a CSO capacity will be made solely by the Office of Court Security on a case-by-case basis in accordance with the requirement to safeguard the federal judicial process, the judiciary, citizens, and property as per policies and directives governing office. In other words, that doesn't invoke any standard or performance requirement or specific things you have to fail to do to get fired. That says they're going to decide case-by-case whether it's consistent in their view with maintaining their security mission. Well, and I agree that that is what it says. It does provide a standard by which whatever conduct is alleged to be measured, if it undermines the safeguarding requirements. And I would just – and there's no dispute. The marshal service can make this determination. But what we submit it cannot do, and none of the language here gives it unfettered complete discretion on a whim, on any basis that it chooses. And that's what we believe supports the property interest argument here, is this doesn't convert this into an at-will. The fact that the marshal service makes the decision does not mean it can make the decision for any reason or no reason at all. Roberts. Thanks, Mr. Ellis. Thank you. We'll reserve the seat.